# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **DONALD H. TURNBULL,** | ) | **Case No. 1:06cv858** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE SARA LIOI** |
| | ) | |
| **v.** | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| **ET AL.** | ) | |
| | ) | |
| **Defendants.** | ) | |

Plaintiff Donald H. Turnbull (plaintiff) brings this action against defendants[1] following his deportation to Jamaica. In his Amended Complaint, Plaintiff alleges that defendants knowingly pursued his unlawful deportation, in direct violation of an Order issued by a United States Magistrate Judge staying his deportation proceedings pending resolution of his petition for a writ of habeas corpus. Plaintiff seeks monetary damages under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 *et seq.*, *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and Ohio common law.

Pursuant to Fed. R. Civ. P. 12(b)(1) and (6), defendants have sought dismissal of this action (Docket No. 20). Plaintiff has filed a response and defendants have filed

---

[1] Plaintiff names as defendants the United States, the U.S. Department of Homeland Security, the U.S. Immigration and Customs Enforcement, the U.S. Department of Justice, and various named and unnamed individual federal employees. Throughout this Memorandum Opinion, the term "defendants" shall be used to refer to all party defendants collectively. Where individual defendants are discussed, the Court will so note.

a reply[2] (Docket Nos. 23 and 31, respectively).

For the reasons that follow, defendants' Motion to Dismiss Plaintiff's First Amended Complaint is **GRANTED**, in part, and **DENIED**, in part.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a native and citizen of Jamaica, and has resided continuously in this country since 1973. Plaintiff also has a minor daughter who was born in the United States and is an American citizen. On December 8, 1983, plaintiff was convicted by a jury of drug trafficking in the Court of Common Pleas for Cuyahoga County, Ohio. Plaintiff was sentenced and served time in prison for that conviction. In 1989, plaintiff pleaded guilty in the same common pleas court to three counts of drug trafficking. Plaintiff served prison time for this conviction, as well.

In 1990, prior to his release from prison on his second conviction, the Immigration and Naturalization Service[3] (INS) commenced deportation proceedings against plaintiff. The Order to Show Cause and Notice of Hearing filed by INS indicated that plaintiff could be deported based upon his 1989 drug conviction. Plaintiff conceded deportability, and sought relief from deportation pursuant to former INA § 212(c), 8 U.S.C. § 1182(c) (1994) (repealed).

On April 24, 1996, before the immigration court could rule on plaintiff's

---

[2] Contemporaneous with the filing of his response, plaintiff filed his First Amended Complaint (Docket No. 24). Following the submission of the amended complaint, defendants filed their Motion to Dismiss the First Amended Complaint (Docket No. 30). This motion supersedes defendant's original motion to dismiss. Because it incorporates the arguments raised in the original dispositive motion, the Court will reference the original motion where appropriate. Plaintiff filed a response to this subsequent motion (Docket No. 33), and defendants replied (Docket No. 31). On November 15, 2006, plaintiff filed a corrected response to defendants' second motion to dismiss (Docket No. 35). All of the pleadings are now properly before the Court.

[3] Effective March 1, 2003, the Immigration and Naturalization Service ceased to exist as a separate agency within the Department of Justice, and its functions were transferred into three new agencies, all part of the Department of Homeland Security. INS' enforcement functions were transferred to the Bureau of Immigration and Customs Enforcement (ICE). *See* Homeland Security Act of 2002, 6 U.S.C. § 251.

application for relief, Congress enacted the Anti-Terrorism and Effective Death Penalty Act (AEDPA). Section § 440(d) of the AEDPA made § 212(c) relief from deportation unavailable to individuals convicted of aggravated felonies. The immigration court pretermitted plaintiff's application for § 212(c) waiver based on a retroactive application of the AEDPA § 440(d).

After plaintiff exhausted his administrative appeals, the INS served a Warrant of Removal/Deportation and a Warning to Alien Ordered Removal or Deported upon plaintiff on April 3, 2000. When plaintiff did not appear for deportation, the Alien Absconder Initiative Unit began searching for him. On February 20, 2004, plaintiff was taken into immigration custody.

Plaintiff filed a petition for a writ of habeas corpus and a motion for a temporary restraining order (TRO) on February 26, 2004 in district court. In support of his habeas petition, plaintiff challenged the final order of deportation on the ground that the repeal of § 212(c) did not apply retroactively to immigration cases that were pending on the date the AEDPA was enacted. The habeas petition was pending before the Honorable Donald C. Nugent at the time of plaintiff's deportation.

According to plaintiff, upon filing the motion for a TRO, plaintiff's counsel engaged in a course of communications with the government and the district court wherein plaintiff's counsel was led to believe that plaintiff was not in immediate danger of deportation (Docket No. 24, First Amended Complaint at ¶ 23). As such, the district court did not immediately rule on the request for a TRO.

On April 16, 2007, despite these prior conversations, plaintiff was taken from the county jail to Cleveland Hopkins International Airport for a 7:06 a.m. flight from Cleveland to Miami. *Id*. at ¶ 27.  Neither plaintiff's counsel, nor the district court, were given

notice of this action. *See Turnbull v. Ridge*, Case No. 1:04CV392 (N.D. Ohio July 9, 2004). Before getting on the plane, plaintiff was allowed to place a telephone call to his mother, and she in turn contacted plaintiff's counsel (Docket No. 24 at ¶¶ 26-27). Plaintiff arrived at Miami International Airport at 9:30 a.m. *Id*. at ¶ 28.

Plaintiff's counsel immediately sought a stay from the district court. Magistrate Judge Hemann[4] issued a stay of deportation at 10:19 a.m. on April 16, 2007 (Docket No. 24, Ex. 1). Meanwhile in Miami, plaintiff and another detainee were the first to board the commercial flight to Jamaica (Docket No. 24 at ¶ 33). According to the stay order, counsel for the United States was instructed to "give notice of the stay to the appropriate Immigration and Naturalization officials and did convey said instructions at approximately 10:20 a.m. on April 16" (Docket No. 24, Ex. 1). It is undisputed that counsel for the United States communicated the content of the stay order to defendant Baker[5] who, in turn, relayed the information to the ICE office in Miami. *Id*. at ¶ 44. It is undisputed that the ICE agents in Miami, defendants Mullen and Nunez, received notice of the stay, but did not extract plaintiff from the airplane.[6] *Id*. at ¶ 34.  Approximately 25 minutes after defendants Mullen and Nunez were apprised of the stay order, the plane bound for Jamaica took off with plaintiff still aboard. *Id.* at ¶ 35.

In an effort to return plaintiff to the United States, plaintiff's counsel and defendant United States' counsel each filed proposed orders. On April 22, 2004, the district court entered an order directing defendant United States to immediately retrieve plaintiff from Jamaica. Plaintiff was returned to the United States thirty-two (32) days after he had been deported. *Id*. at 45.

---

[4] Judge Nugent was not available and Magistrate Judge Patricia A. Hemann presided over the hearing on the motion for a stay.
[5] Defendant (Neal) Baker is the Supervisory Detention and Deportation Officer in ICE's Cleveland Sub-District Office of Detention and Removals (Docket No. 24 at ¶ 11).
[6] Defendants Nunez and Mullen maintained that it was not possible to remove plaintiff from the plane because general boarding had begun (Docket No. 24 at ¶ 36).

Upon his return, the district court granted plaintiff's motion for release from custody. On July 9, 2004, the district court granted plaintiff's habeas petition, vacated the order of removal as contrary to law, and remanded to the Board of Immigration Appeals to assess eligibility for § 212(c) relief.

Plaintiff filed the present lawsuit on April 11, 2006.[7] In his amended complaint, Plaintiff seeks damages against defendant United States under the FTCA, 28 U.S.C. § 2671 *et seq*., raising common law claims for intentional infliction of emotional distress, negligent infliction of emotional distress, and false imprisonment. He is also pursuing damages against certain individual federal defendants under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Additionally, plaintiff requests a declaration that defendants' practices and polices violate the United States Constitution and relevant immigration regulations, and an order permanently enjoining defendants from interfering with his constitutional rights.

## II.    <u>STANDARD OF REVIEW</u>

Defendants bring the present motions under Fed. R. Civ. P. 12(b)(1) & (6). There are two general categories into which Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction fall:  facial attacks and factual attacks. Fed. R. Civ. P. 12(b)(1); *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994), *cert. denied*, 513 U.S. 868 (1994). A facial attack challenges the sufficiency of the pleading itself. On such a motion, the Court must take all of the material allegations in the complaint as true and construe them in the light most favorable to the nonmoving party. *Id., citing Scheuer v. Rhodes*, 416 U.S. 232, 235-37 (1974). In contrast, a factual attack, as is made here, challenges the factual existence of subject matter jurisdiction.

---

[7] This matter was originally assigned to the docket of the Honorable Donald C. Nugent. The action was reassigned to the docket of the Honorable Sara Lioi on March 21, 2007.

On this form of motion, the Court's inquiry is limited to determining whether the challenged pleadings set forth allegations sufficient to show the Court that it has jurisdiction over the subject matter, "no presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id. (internal citations omitted); RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1135 (6th Cir. 1996). In reviewing such a motion, a district court is to probe the facts and assess the validity of its own jurisdiction. In doing so, the Court has wide discretion to consider affidavits and documents outside the complaint, and may even conduct a limited evidentiary hearing if necessary. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). In connection with this analysis, the plaintiff bears the burden of demonstrating that the Court has and may appropriately exercise jurisdiction over the subject matter. *RMI Titanium Co.*, 78 F.2d at 1134. The Court may examine evidence of its power to hear a case, and must make any factual findings necessary to determine whether it has jurisdiction. *Kroll v. United States,* 58 F.3d 1087, 1090 (6th Cir. 1995); *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986).

In deciding a motion to dismiss under Rule 12(b)(6), the Court must take all well-pleaded allegations in the complaint as true and construe those allegations in a light most favorable to the plaintiff. *Dana Corp. v. Blue Cross & Blue Shield Mut.*, 900 F.2d 882 (6th Cir. 1990); *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485 (6th Cir. 1990). However, the Court need not accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A well-pleaded allegation is one that alleges specific facts and does not merely rely upon conclusory statements. The Court is to dismiss the complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the

6

allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

## III.    DISCUSSION AND LAW

### A.    Subject Matter Jurisdiction

1.    *Application of 8 U.S.C. § 1252(g)*

At the outset, the Court must address the issue of subject matter jurisdiction. Defendants contend that plaintiff's lawsuit is barred by 8 U.S.C. § 1252(g), which provides:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory) including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act.

Relying on *Foster v. Townsley*, 243 F.3d 210 (5th Cir. 2001), a case wherein an alien brought suit challenging the former INS' actions in removing him from the country, defendants argue that "plaintiff's claims for damages and declaratory relief arise from the decision to execute his order of deportation" (Docket No. 20 at 5).

Plaintiff insists, however, that his claims fall outside the plain language of 8 U.S.C. § 1252(g). Specifically, it is plaintiff's position that the present action does not arise from the execution of a removal order but, rather, from defendants' defiance of the Magistrate Judge's stay order in the habeas proceeding (Docket No. 35 at 1). Plaintiff's argument is well taken.

In *Reno v. American-Arab Anti-Discrimination Comm. (AAADC)*, 525 U.S. 471 (1999), the U.S. Supreme Court rejected early judicial interpretations of 8 U.S.C. § 1252(g) as a "zipper" clause that foreclosed judicial review of any action involving deportation.

Rather, in *AAADC,* the Supreme Court limited the reach of § 1252(g) by finding that:

> The provision only applies to three discrete actions that the Attorney General may take: her "decision or action" to "*commence* proceedings, *adjudicate* decisions, or *execute* removal orders." There are of course many other decisions or actions that may be part of the deportation process—such as the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order, that is the product of the adjudication, and to refuse reconsideration of that order.

*Id*. at 482 (emphasis in the original), *citing* 5 U.S.C. § 1252(g).

In *Mustata v. United States, DOJ*, 179 F.3d 1017 (6th Cir. 1999), the Sixth Circuit applied the narrow scope of § 1252(g) imposed in *AAADC*. There, an alien brought a federal habeas petition to challenge the failure of his counsel to provide effective assistance of counsel during his deportation proceeding in violation of his right to due process under the Fifth Amended to the U.S. Constitution. Even though the ineffective assistance of counsel occurred during the deportation process, the *Mustata* Court ruled that the alien's habeas action was not barred by § 1252(g) because *Mustata* was not challenging the Attorney General's decision to commence proceedings, adjudicate decisions, or execute removal orders. *Mustata*, 179 F.3d at 1022. In reaching this conclusion, the Sixth Circuit noted that the alien was not challenging his right to remain in the United States, only his right to due process during the deportation proceedings. *Id*. at 1022-1023.

Similarly, in *Zhislin v. Reno*, 195 F. 3d 810 (6th Cir. 1999), the Sixth Circuit found that 8 U.S.C. § 1252(g) did not bar review of an alien's habeas petition challenging INS' ability to indefinitely hold him in custody. While INS had determined that Zhislin was deportable, it could not effectuate the deportation because it could not find a country that was willing to accept him. As a result, Zhislin remained in INS custody awaiting the identification of a "Zhislin friendly" country. Because Zhislin was not challenging the deportation order, but

rather the Attorney General's right to detain him indefinitely, the action did not arise from the decision to execute a removal order and § 1252(g) was inapplicable. *Id.* at 813.

Like the alien in *Zhislin*, plaintiff is not challenging the order of removal. Rather, the focus of the present lawsuit is the damages that flowed from defendants' refusal to abide by the stay order issued in the habeas proceeding and the forced deportation that followed. Because plaintiff's action does not arise from defendants' original decision to execute a removal order, § 1252(g) does not rob this Court of subject matter jurisdiction.

      2.   *Application of 8 U.S.C. § 1252(b)(9)*

Defendants also challenge the Court's jurisdiction to review plaintiff's request for injunctive and declaratory relief. Relying on 8 U.S.C. § 1252(b)(9), defendants argue that an action for an injunction or declaration cannot be maintained because plaintiff merely "remains in deportation proceedings" and is not currently subjected to a final order of deportation (Docket No. 20 at 6). It is plaintiff's position that § 1252(b)(9) is inapplicable because the present action is "separate and distinct from any possible future petition for review of a final immigration order" (Docket No. 35 at 7).

"While [8 U.S.C. § 1252](g) has been interpreted narrowly and held not to apply to the universe of deportation claims, courts have interpreted sections (b)(9) of the INA's judicial review provision more expansively." *Detroit Free Press v. Ashcroft*, 195 F. Supp. 2d 948, 954 (E.D. Mich. 2002) *aff'd,* 303 F.3d 681 (6th Cir. 2002). That section provides:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any section taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.

8 U.S.C. § 1252(b)(9).

The opening language of subsection (b) provides: "With respect to review of an order of removal under subsection (a)(1) of this section, the following requirements apply." § 1252(b). The plain language of the statute clearly indicates that all of subsection (b), including, § 1252(b)(9), is limited to actions challenging "*an order of removal under subsection (a)(1)*." *See Detroit Free Press*, 195 F. Supp. 2d at 954. In fact, in *INS v. St. Cyr.*, 533 U.S. 289, 313 (2001), the Supreme Court clarified its previous description of § 1252(b)(9) as a "zipper clause," stating that "its purpose is to consolidate 'judicial review' of immigration proceedings into one action in the court of appeals, but it applies only 'with respect to review of an order of removal under subsection (a)(1)." *Id.* (citations omitted). Thus, the Supreme Court explained that § 1252(b)(9) did not negate other grants of federal jurisdiction, such as review of matters collateral to immigration proceedings. *Id.* at 314. *See Detroit Free Press*, 195 F. Supp. 2d at 954.

In *Detroit Free Press*, aliens involved in deportation proceedings filed complaints for injunctive and declarative relief, challenging the United States' decision to close their removal hearings to the press and the public. The court rejected the United States' argument that § 1252(b)(9) barred judicial review because there was no final order of deportation inasmuch as the action challenged the decision to close the proceedings to the public, not the order of removal,  itself. *Id.*

Plaintiff is not attempting to use the present lawsuit to circumvent the administrative process set up to review orders of removal. Rather, his action is specifically limited to an attack upon the decision to disregard the Magistrate Judge's stay order. Consequently, § 1252(b)(1) does not foreclose judicial review of plaintiff's action. *See e.g., Detroit Free Press*, 195 F. Supp. 2d at 954-955.

A.  **FTCA Claims against the United States**

Having determined that the Court is vested with subject matter jurisdiction, it can now turn its attention to defendants' request for dismissal of the First Amended Complaint under Fed. R. Civ. P. 12(b)(6). With respect to the claims under the FTCA, both sides agree that the United States is the proper defendant.[8]

It is well settled that the "United States, as sovereign, is immune from suit save as it consents to be sued […] and the terms of its consent to be sued in any court defines the court's jurisdiction to entertain the suit." *United States v. Testan*, 424 U.S. 392, 399 (1976), *citing United States v. Sherwood*, 312 U.S. 584, 586 (1941). With respect to common law torts, Congress has enacted a limited waiver of its sovereign immunity through the FTCA. At the same time Congress provided this waiver, it also enacted exceptions to such waiver. At issue here is the "intentional tort" exception to the FTCA. It provides that immunity is not waived as to:

> Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit or interference with contract rights.

28 U.S.C. § 2680(h).

Defendants argue that the claims for intentional and negligent infliction of emotional distress are barred by § 2680(h) because both claims arise out of the allegations that his counsel "engaged in a course of communication with the government" that he allegedly relied on to his detriment by not seeking a ruling on his pending TRO to stay deportation. (Docket No. 20 at 9). Because these claims truly sound in misrepresentation, defendants argue that the United

---

[8] The United States Attorney for the Southern District of Ohio has certified that defendant (Neal) Baker was acting within the scope of his employment at all times relevant to this lawsuit (Docket No. 19). Therefore, the United States is substituted by operation of law on plaintiff's tort claims. This substitution is reflected in the First Amended Complaint inasmuch as the common law tort claims, which were originally brought against defendant (Neal) Baker, are now brought solely against defendant United States (Docket No. 24 at ¶¶ 51-58).

States has specifically refused to waive immunity under 28 U.S.C. §2680(h) [9] (Docket No. 20 at 9).

Plaintiff argues, however, that he does not seek to hold Defendant United States liable for emotional distress arising out of his reliance on the government's representations that deportation was not imminent, but rather upon defendants' refusal to abide by the Magistrate Judge's stay order (Docket No. 35 at 9-10). He insists that his damages result from plaintiff's "forced separation from his family and his four week long stay in Jamaica without any money and only the clothes on his back" *Id*. at 10.

Courts must "look beyond the literal meaning of the language to ascertain the real cause of the complaint." *Neustadt v. United States*, 366 U.S. 696, 706 (1961). A "cause of action which is distinct from one of those excepted under 28 U.S.C. § 2680(h) will nevertheless be deemed to 'arise out of' an excepted cause of action when the underlying governmental conduct which constitutes an excepted cause of action is 'essential to plaintiff's claim.'" *Metz v. United States*, 788 F.2d 1528, 1534 (11th Cir. 1986), *quoting Block v. Neal*, 460 U.S. 289, 296 (1983).

In the First Amended Complaint, a reasonable reading of the emotional distress claims is that they are built upon allegations that defendants' refusal to obey the stay order and the forced deportation resulted in substantial emotional damage to plaintiff (Docket No. 24 at ¶¶ 45-48 and 51-55). Nonetheless, cemented within this foundation are allegations that defendants misrepresented the imminence of plaintiff's deportation and maliciously and wrongfully accused plaintiff of attempting to escape during the course of the deportation (Docket No. 24 at ¶¶ 23-27, 38, 49).

---

[9] Indeed, the original complaint contained a cause of action for misrepresentation. Plaintiff's First Amended Complaint, however, does not contain such a claim.

It is unclear from the face of the amended complaint whether plaintiff's first two causes of action are truly emotional distress claims or are merely misrepresentation claims masquerading as claims for emotional distress. While discovery may reveal that these claims are completely dependent upon misrepresentations and defamatory statements made by defendants, it cannot be concluded at this time that the emotional distress claims fall within one of the exceptions specifically identified in § 2680(h). *See e.g., Hartwig v. United States*, 80 F. Supp. 2d 765, 766 (N.D. Ohio 1999) (While emotional distress claims under the FTCA were ultimately dismissed because extensive discovery revealed that they were dependent upon defamatory remarks by the government, these claims survived a pre-discovery dispositive motion because the connection to the defamatory statement was not clear from the face of the complaint).

Likewise, the Court rejects defendants' argument that the due care exception in 28 U.S.C. § 2680(a) bars the tort claims. This section of the FTCA provides that "the actions of government employees acting within the statutory or regulatory framework are not a basis for a claim even if the statute or regulations [are] invalid." § 2680(a). Two questions are relevant to the analysis: (1) did the statute or regulation mandate a course of action for an officer to follow; and (2), if a specific action is mandated, was due care used in following the dictates of that statute or regulation. *Welch v. United States*, 409 F.3d 646, 652 (4th Cir. 2005). Because the deportation order dictated that plaintiff was to be deported, and the agents exercised due care pursuant to the execution of that order by placing him on the plane, defendants contend that 28 U.S.C. § 2680(a) bars plaintiff's tort claims.

While 8 U.S.C. § 1231(a)(1)(A) authorizes the Attorney General, and or his agents, to execute a removal order, the removal order cannot serve as the basis for a finding

of due care under 28 U.S.C. § 2680(a). Neither the removal order, nor 8 U.S.C. § 1231(a)(1)(A), authorized defendants to disregard the Magistrate Judge's stay order, and defendants have not offered any authority to support a conclusion that they were privileged to ignore the stay order and pursue the original removal order so long they exercised due care.

### 1.    Intentional Infliction of Emotional Distress

The Court must now examine the individual tort claims and determine if plaintiff has failed to state a claim upon which relief could be granted, such that dismissal of that claim would be appropriate under Fed. R. Civ. P. 12(b)(6). The FTCA provides that common law tort claims are governed by the law of the place where the act or omission occurred. 28 U.S.C. § 1346(b)(1). *See Sidley v. United States, Dep't of Navy, 861 F.2d 988* (6th Cir. 1988). Plaintiff maintains that actions underlying each common law tort occurred in Ohio and Florida.

Ohio choice of law rules are applicable here, and the Ohio Supreme Court has held that the Restatement (Second) of Conflicts governs choice of law questions in this state. *Morgan v. Biro Mfg. Co.*, 15 Ohio St. 3d 339, 342 (1984); *Macurdy v. Sikov & Love, P.A.*, 894 F.2d 818, 820 (6th Cir. 1990).  Ohio continues to recognize *lex loci delicti*, the place where the tort occurs, but that principle no longer automatically determines which state's law applies. Rather, the court must apply the Restatement analysis, which looks at the following factors: the place where the injury occurred; the place where the conduct causing the injury occurred; the domicile, residence, nationality, place of incorporation and place of business of the parties; and the place where the relationship, if any, between the parties is centered. Restatement (Second) of Conflicts of Laws, § 145(2). *See Charash v. Oberlin College*, 14 F.3d 291, 296 (6th Cir. 1994). Finally, these contacts are to be evaluated according to their relative importance with respect to the particular issue." *Charash*, 14 F.3d at 296.

Applying Ohio's choice of law rules, it would seem clear that Florida law governs plaintiff's FTCA claims.  While the decision to commence deportation, and the issuance of the order staying deportation occurred in Ohio, plaintiff was already in custody when he was put on a plane for Florida. His true injury did not occur until defendants Mullen and Nunez refused to extract him from the plane in Miami, in violation of the stay order. Because this conduct is the focus of plaintiff's case, it follows that the more significant contacts are in Florida. As such, Florida common law will govern plaintiff's torts brought against defendant United States.

In order to state a cause of action for intentional infliction of emotional distress in Florida, it must be shown that: (1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous; (3) the conduct caused emotional distress; and (4), the emotional distress was severe. *De La Campa v. Grifols Am., Inc.*, 819 So. 2d 940, 943 (Fla. Dist. Ct. App. 3d Dist. 2002). Outrageous conduct is conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Metropolitan Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278-79 (Fla. 1985).

Applying all well-pleaded facts as true, as the Court must do when considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court finds that plaintiff has made out a claim for intentional infliction of emotional distress under Florida law. Allegations that defendants disregarded a federal magistrate judge's clearly worded stay order, despite ample time to comply with the order, and with the effect of depositing plaintiff in a foreign country with no means of support, separated from his family, certainly rise to the level of "outrageous." While it remains to be seen whether plaintiff will ultimately prove these allegations, they are

sufficient to stave off dismissal at this time.[10]

### 2.  *Negligent Infliction of Emotional Distress*

In order to make out a cause of action for negligent infliction of emotional distress under Florida law, a plaintiff must demonstrate that: (1) the plaintiff suffered a discernable physical injury; (2) the physical injury was caused by the psychological trauma; (3) the plaintiff was involved in the event causing the negligent injury to another; and (4), the plaintiff had a close personal relationship to the directly injured person. *LeGrande v. Emmanuel*, 889 So. 2d 991, 994 (Fla. Dist. Ct. App. 3d Dist. 2004).

Defendants argue that plaintiff's negligent infliction of emotional distress claim fails because he has not alleged that the emotional distress flowed from physical injuries sustained in an impact. *See Southern Baptist Hosp. of Fla., Inc. v. Welker*, 908 So. 2d 317, 320 (Fla. 2005). The "impact" rule has been traditionally applied primarily as a limitation to assure a tangible validity of claims for emotional or psychological harm. *See R.J. v. Humana of Fla., Inc.*, 652 So. 2d 360, 363 (Fla. 1995). "The impact rule is not, however, an inflexible, unyielding rule of law, so sacred that it must be blindly followed without regard to context." *Rowell v. Holt*, 850 So. 2d 474, 478 (Fla. 2003).  In recent years, Florida courts have been carving out exceptions from the general impact rule. *See Eastern Airlines, Inc. v. King,* 557 So. 2d 574, 576-77 (Fla. 1990) (impact rule does not apply to intentional torts, such as defamation); *Tanner v. Hartog*, 696 So. 2d 705, 708 (Fla. 1997) (the impact rule did not preclude parents of a child stillborn as a result of negligent medical care from  recovering for the mental anguish sustained). "There is,

---

[10] The same result would occur under Ohio law. To make out a claim for intentional infliction of emotional distress under Ohio law, a plaintiff must show that (1) the defendant intended to cause plaintiff emotional distress or knew or should have known that its actions would result in plaintiff's serious emotional distress, (2) the defendant's conduct was extreme and outrageous, and that it went beyond all possible bounds of decency, (3) the defendant's actions were the proximate cause of the plaintiff's psychic injury, and (4) the mental anguish plaintiff suffered is serious and of a nature that no reasonable person could be expected to endure. *Pyle v. Pyle*, 11 Ohio App. 3d 31, 34 (1983). The allegations in the First Amended Complaint set forth all of the elements for this claim (Docket No. 24 at §§ 52-53).

however, no cognizable action for simple negligence resulting in psychological trauma, alone, unless the case fits within one of the narrow exceptions to the impact rule." *Rowell*, 850 So. 2d at 478.

In *Rowell*, an individual arrested on gun possession charges brought suit against his public defender seeking emotional damages after the attorney failed to produce a document in his possession, which was requested by the trial court and would have demonstrated that his client had the legal right to possess the weapon. The document was apparently lost and the client needlessly spent more than a week in custody before a copy was finally located. The court ruled that the lack of a physical impact did not foreclose suit because the public defender had a clear duty to his client to exercise reasonable care and that there was a clearly foreseeable emotional injury involved in wrongful incarceration.[11] *Id*. at 480. The court also observed that the damages suffered were reasonably capable of measurement, inasmuch as it was known how long he was incarcerated and there was a clear connection between the negligence and the resulting emotional injury.

Like the plaintiff in *Rowell*, there is a definite connection between the refusal to extract plaintiff from the plane and the emotional injury that flowed from the alleged wrongful deportation and separation from his family. Additionally, like the plaintiff in *Rowell*, the alleged emotional injury to plaintiff was foreseeable and could have been avoided if defendants had simply honored the Magistrate Judge's order. These damages are also reasonably ascertainable—the number of days plaintiff spent in Jamaica is known, and the conditions that he was subjected to during this period can be determined. While discovery may ultimately

---

[11] The court observed that while "there must be some level of harm which one should absorb without recompense as the price [paid] for living in an organized society, we believe that Rowell paid too high a price with his pretrial liberty to be forced to forego compensation based upon rigid application of a limiting doctrine[…]. No man or woman should be forced to be wrongfully incarcerated on a continuing extended basis in a pretrial detention posture while his or her attorney holds the key in hand to simply open the door to freedom." *Id.* at 480 (internal citations omitted).

demonstrate that plaintiff is not entitled to present this claim to a jury, plaintiff's pleadings to date are sufficient to set forth a claim for negligent infliction of emotional distress.[12]

### 3.  False Imprisonment[13]

Plaintiff has not, however, proffered allegations that would establish a basis for a claim of false imprisonment. Under Florida law, the tort of false imprisonment contains the following elements: (1) the unlawful detention and deprivation of liberty of a person (2) against that person's will (3) without legal authority or "color of authority" and (4) which is unreasonable and unwarranted under the circumstances.[14] *Johnson v. Weiner*, 155 Fla. 169 (1944); *Jackson v. Navarro*, 665 So. 2d 340, 341 (Fla. Dist. Ct. App. 4th Dist. 1995).

It is undisputed that plaintiff was already in immigration custody when he was taken from the Seneca County Jail and put on a plane for Miami.  It is equally beyond dispute that plaintiff's custody in Ohio was lawful, and that agents were acting with color of authority when they caused him to be sent to Miami for ultimate deportation to Jamaica. The detention and deprivation of his liberty that occurred from the time he left Ohio until the stay order was issued was lawful. In fact, if defendants Mullen and Nunez had removed plaintiff from the plane in Miami, they would have returned him to custody in Ohio. Indeed, when plaintiff was finally returned to the United States, he remained in custody until the district court granted his Motion for Release from Custody on May 24, 2004. As such, plaintiff has failed to establish that he was unlawfully detained by defendants.

---

[12] The analysis and the result would be the same under Ohio law. *See Heiner v. Moretuzzo*, 73 Ohio St. 3d 80, 86-87 (1995). Like Florida, a physical impact is no longer necessary to support a claim for negligent infliction of emotional distress so long at the injury was reasonably foreseeable. *See Paugh v. Hanks*, 6 Ohio St. 3d 72, 79 (1983).

[13] Though not argued by defendants, plaintiff's false imprisonment claim is also barred by the "intentional tort" exception to the FTCA, found at 28 U.S.C. § 2860(h). *See e.g., Snow-Erlin v. United States*, 470 F.3d 804, 808 (9th Cir. 2006).

[14] Ohio recognizes the same elements for the claim of false imprisonment. *See Bennett v. Ohio Dept. of Rehabilitation & Correction*, 60 Ohio St. 3d 107, 109 (1991). As such, the analysis and result would be the same under Ohio common law.

B.   **Plaintiff's _Bivens_ Claims against the Individual Defendants**[15]

With respect to the individual federal defendants, plaintiff seeks to recover from them via an implied remedy under _Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics_,  403 U.S. 388 (1971). In _Bivens,_ the U.S. Supreme Court recognized in the U.S. Constitution an implicit damages cause of action against individual federal officers for violations of certain constitutional rights. _Bivens_, 403 U.S. at 396.

a. _Existence of Special Factors_

While the _Bivens_ doctrine has been greatly expanded, the U.S. Supreme Court has recognized that a _Bivens_ remedy will not be implied where (1) "there are special factors counseling hesitation in the absence of affirmative action by Congress;" or (2) "Congress has provided an alternative remedy which it explicitly declared to be a substitute for recovery directly under the constitution and viewed as equally effective." _Jones v. Tennessee Valley Authority_, 948 F.2d 258, 262 (6th Cir. 1991). _See Downie v. City of Middleburg Heights_, 301 F.3d 688, 694 (6th Cir. 2002).  Courts must give appropriate deference to indications that Congress has provided what it considers to be adequate remedies for constitutional violations. _See Schweiker v. Chillicky_, 487 U.S. 412, 423 (1988). In determining if special factors exist, many courts have limited their inquiry to a determination of whether: "Congress has enacted a comprehensive administrative scheme governing the area involved, which indicates that Congress' failure to provide a damages remedy for constitutional violations was deliberate rather than inadvertent." _Jones_, 948 F.2d at 264.

Defendants maintain that special factors counsel hesitation in implying a

---

[15] Plaintiff's First Amended Complaint represents the first time defendants J. Mullen and J. Nunez were identified as defendants in this action (_See_ Docket No. 24 at ¶¶12-13). Finding that the arguments raised by defendant (Neal) Baker as to the _Bivens_ claims apply equally to defendants Mullen and Nunez, the Court will consider them as if they were raised by them as well.

*Bivens* cause of action. Defendants look to the statutory regulation governing immigration matters set for in 8 U.S.C. § 1252, and underscore the language in § 1252(b)(9), which provides that "judicial review of all questions of law and fact […] arising from any action taken or proceedings brought to remove an alien from the United States […] shall be available only in judicial review of a final order under this section." According to defendants, the fact that Congress has foreclosed judicial review of everything other than a final removal order demonstrates that the "failure to create a remedy against individual employees was not an oversight" (Docket No. 20 at 13), *quoting Surge v. Derwinski*, 26 F.3d 8, 12 (2nd Cir. 1994).

This very argument was raised and rejected in *Turkmen v. Ashcroft*, 2006 U.S. Dist. LEXIS 39170 (E.D.N.Y. June 14, 2006). The court reasoned:

> Although, as defendants say, the INA provides a comprehensive *regulatory* scheme for managing the flow of immigrants in and out of the county, it is by no means a comprehensive *remedial* scheme for constitutional violations that occur incident to the administration of that regulatory scheme.

*Id.* at *90-*91 (emphasis in the original). *See Arar v. Ashcroft*, 414 F. Supp. 2d 250 (E.D.N.Y 2006) (rejecting the argument that immigration laws provided an adequate and meaningful remedy for alien allegedly tortured by Syrian officials upon his removal from the United States). Plaintiff's proposed *Bivens* claims do not challenge the decision to remove him from this country, but rather focus upon the alleged violation of his rights that occurred incident to the administration of the removal process. Because defendants can point to no evidence that Congress intended to preclude review of such a violation, the Court finds that special factors do not counsel hesitation in considering a *Bivens* claim here.

### a. Qualified Immunity

Defendants argue that even if special factors do not foreclose the implication of a *Bivens* action, the individual defendants are entitled to qualified immunity from

these claims. Government officials enjoy qualified immunity from suit for damages to "shield them from undue interference with their duties and from potentially disabling threats of liabilities." *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982). In *Saucier v. Katz*, 533 U.S. 194, 201 (2001), the Supreme Court established a two-part inquiry for determining whether qualified immunity exists. First, a court must decide whether the alleged facts, taken in the light most favorable to the injured party, establish the violation of a constitutional right. If a constitutional right is not implicated, the inquiry ends and the official is entitled to qualified immunity. *Id.* If, however, a constitutional right is implicated, the next inquiry is "whether the right was clearly established." *Id*. at 201.

Plaintiff alleges that defendants (Neal) Baker, Mullen, and Nunez "violated Plaintiff's constitutional and statutory rights by failing to make reasonable efforts to comply with this Court's order staying Plaintiff's deportation, acting in direct contravention of the respresentations [sic] made through government counsel to Judge Nugent and Plaintiff's counsel, and denying Plaintiff access to counsel" (Docket No. 35 at 16). (*See* Docket No. 24 at ¶¶ 59-64). Because the Court finds that these allegations do not implicate a constitutional right, it concludes that defendants (Neal) Baker, Mullen, and Nunez are entitled to qualified immunity.

Aliens do not have a Sixth Amendment right to be represented in deportation proceedings. However, the Fifth Amendment does guarantee aliens due process in those proceedings, entitling them to a full and fair hearing.[16] *Denko v. INS*, 351 F. 3d 717, 723 (6th Cir. 2003); *Huicochea-Gomez v. INS,* 237 F.3d 696, 699 (6th Cir. 2001).

Plaintiff claims that the refusal to abide by the stay order constituted a violation of the Fifth Amendment. Yet it is clear that plaintiff was afforded all the process he was

---

[16] In addition, 8 U.S.C. § 1362 provides aliens with the right to representation by counsel of choice, at no personal expense, in removal proceedings. Aliens are also guaranteed a reasonable opportunity to present evidence in their own behalf. 8 U.S.C. § 1252(b).

due. Plaintiff's temporary removal to Jamaica did not prevent or even delay the resolution of the habeas proceedings. Plaintiff was returned to the United States ten days before the Case Management Conference for the habeas petition was scheduled to occur.  Plaintiff and his counsel were able to participate in the habeas proceedings, and plaintiff ultimately prevailed, receiving the relief he requested. The fact that he spent time in Jamaica, instead of an Ohio jail, prior to the hearing did not rob him of due process. [17]

Plaintiff also claimed that the individual defendants interfered with his right to effective assistance of counsel under the Fifth Amendment by failing to inform plaintiff's counsel of his imminent deportation (Docket No. 35 at 18). Again, plaintiff fails to show how this act interfered with his Fifth Amendment right to counsel. Counsel did participate in the habeas proceedings, and was able to achieve a favorable result for his client. In fact, despite the lack of notice, counsel was able to obtain a stay order to block the impending deportation. The fact that plaintiff was, nonetheless, deported was not the result of inadequate representation. While defendants Mullen and Nunez may very well have erred in refusing to extract plaintiff from the plane in Miami, their failure to do so did not flow from a Fifth Amendment deprivation of the right to counsel. Consequently, plaintiff has not alleged facts from which a trier of fact could find that the proceedings were so fundamentally unfair that he was prevented from

---

[17] Even if plaintiff had not been returned in time to participate in the proceedings, his right to due process would not necessarily have been violated. In *United States v. Garcia-Echaverria*, 374 F.3d 440 (6th Cir. 2004), the court rejected an alien's allegation that he was deprived due process when he was deported prior to the resolution of his habeas petition. While the court found that his removal "made it more difficult for him to pursue his petition for habeas corpus […] it did not make it impossible for him to pursue that petition." *Id.* at 450.

reasonably presenting his case.[18] *Denko*, 351 F.3d at 723. *See Taniguchi v. Schultz*, 303 F.3d 950, 958 (9th Cir. 2002) ("To show ineffective assistance of counsel, a party must demonstrate that the actions of his/her attorney resulted in prejudice to the party").

## III.    CONCLUSION

         For all of the foregoing reasons, defendants' Motion to Dismiss Plaintiff's First Amendment Complaint (Docket No. 30) is **GRANTED**, in part, and **DENIED**, in part. Plaintiff's claim for false imprisonment against defendant United States and his *Bivens* claims against defendants (Neal) Baker, Mullen and Nunez are hereby **DISMISSED WITH PREJUDICE**. To the extent that defendants (Neal) Baker, Mullen and Nunez are sued in their individual capacity, they are **DISMISSED** from this action. Plaintiff's damages claims against defendant United States for intentional infliction of emotional distress and negligent infliction of emotional distress under the FTCA, and his requests for injunctive and declaratory relief, remain. Defendants' motion to dismiss plaintiff's original complaint (Docket No. 20) is **DENIED AS MOOT**.

         **IT IS SO ORDERED.**

Dated: July 23, 2007

                                 s/ Sara Lioi
                                 Hon. Sara Lioi
                                 United States District Judge

---

[18] Plaintiff's First Amended Complaint also raises a *Bivens* claim for retaliation. By deporting plaintiff in violation of the federal stay order, Plaintiff alleges that defendants (Neal) Baker, Mullen and Nunez violated his Fifth Amendment right to be free from retaliation while exercising his right to federal court review (Docket No. 24 at ¶ 64). Plaintiff was not deported because he sought habeas review. Rather, he sought judicial review because defendants were pursuing deportation. Absent a causal connection between the protected activity and the resulting injury, plaintiff's conclusory allegation that the decision to disregard the stay order was retaliatory is insufficient to stave off dismissal. *See Hartman v. Moore*, 547 U.S. 250, _, 126 S.Ct. 1695, 1703 (2006) (must show causation between retaliatory animus and subsequent injury). Consequently, this claim is also **DISMISSED**.